**BURLINGTON NORTHERN RAILROAD COMPANY, Plaintiff,**

v.

**OMAHA PUBLIC POWER DISTRICT and Nebraska Public Power District, Defendants.**

**No. CV88–L–49.**

United States District Court, D. Nebraska.

Aug. 24, 1988.

 

Rodney M. Confer, Wallace A. Richardson, Knudsen, Berkheimer, Richardson & Endacott, Lincoln, Neb. and Steven A. Brigance, Associate General Counsel, Burlington Northern R.R., Ft. Worth, Tex., for plaintiff.

Kile W. Johnson, James Eske, Barlow, Johnson, DeMars & Flodman, Lincoln, Neb. and Gene D. Watson, Columbus, Neb., Stephen G. Olson, Fraser, Stryker, Veach, Vaughn, Meusey, Olson, Boyer & Bloch, Omaha, Neb., for defendants.

MEMORANDUM AND ORDER ON MOTION FOR SUMMARY JUDGMENT OF PLAINTIFF BURLINGTON NORTHERN RAILROAD COMPANY, FILING 66; MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR SUMMARY JUDGMENT, FILED BY NEBRASKA PUBLIC POWER DISTRICT; FILING 67; AND MOTION FOR LEAVE TO AMEND COMPLAINT, FILING 80.

URBOM, District Judge.

The plaintiff, Burlington Northern Railroad Company, seeks to prevent the disclo-

sure by Omaha Public Power District to Nebraska Public Power District of a contract between Burlington Northern Railroad Company and Omaha Public Power District. Dispositive motions have been filed by Burlington Northern and NPPD.

## MOTION TO AMEND COMPLAINT

Preliminarily, I shall resolve the plaintiff's motion for leave to amend the complaint for a second time. Both the first amended complaint, filing 46, and the proposed second amended complaint seek two remedies: a declaratory judgment that OPPD may not publicly disclose the contract and an injunction prohibiting OPPD and NPPD from doing any act that would result in public disclosure of the contract. The proposed second amended complaint would add a request for a declaratory judgment that the contract is exempt from disclosure under the Nebraska Public Records Act.

■ The first amended complaint asserts two grounds for relief: (1) confidentiality of the contract under the Staggers Rail Act of 1980, 49 U.S.C. § 10713, and the implementing regulations by the Interstate Commerce Commission and (2) the exemption from public disclosure of trade secrets and other proprietary or commercial information Neb.Rev.Stat. § 84–712.05, which I shall call the Nebraska Public Records Act. The proposed second amended complaint would add the Nebraska Trade Secrets Act, Neb.Rev.Stat. § 87–502 *et seq.;* a Civil Rights Act, 42 U.S.C. § 1983; and the Supremacy Clause of the United States Constitution.

The plaintiff argues that the proposed second amended complaint merely "sets forth explicitly the legal theories upon which Burlington Northern is proceeding: the Nebraska Declaratory Judgment Act, the Nebraska Trade Secrets Act, 42 U.S.C. § 1983, and the Supremacy Clause of the United States Constitution." Memorandum in support of motion for leave to amend, p. 1.

I think the first amended complaint is precise enough to let everyone know that the plaintiff is proceeding under the Ne-

braska Public Records Act and the Supremacy Clause of the United States Constitution. It also makes it clear that the plaintiff is seeking a declaratory judgment. A reference now to the Nebraska Declaratory Judgment Act would be of no assistance. There is a federal statute authorizing this court to grant declaratory judgments upon appropriate pleadings and I have no reason to think that the Nebraska statute can confer any different authority upon this federal court to grant a declaratory judgment and injunctive relief. Title 28, U.S.C. § 2201 and 2202 are adequate for the purpose.

■ The Nebraska Trade Secrets Act, § 87–502, was passed in 1988 and became effective on July 9, 1988. It authorizes the enjoining of any actual or threatened "misappropriation" of a trade secret. Section 87–507 specifically says, however:

"The Trade Secrets Act shall not apply to any misappropriation occurring prior to July 9, 1988. With respect to a continuing misappropriation that began prior to July 9, 1988, such act also shall not apply to the continuing misappropriation that occurs after such date."

No identification of any "misappropriation" by NPPD or OPPD occurring after July 9, 1988, has been made by Burlington Northern. This lawsuit was filed on January 25, 1988. The original complaint, the first amended complaint, and the proposed second amended complaint all point to receipt on December 28, 1987, by OPPD of a letter from NPPD containing a request for a disclosure of the contract as being the triggering event leading to this lawsuit. That event occurred before July 9, 1988, and the Trade Secrets Act, therefore, by its explicit terms can have no application.

■ As to the provisions of the Civil Rights Act, 42 U.S.C. § 1983, I find the proposed insertion to be of such broad and general nature that it may broaden the scope of the lawsuit unduly at this stage. The second amended complaint proposes to say at paragraph 18:

"Under the provisions of 42 U.S.C. § 1983, NPPD, under color of law of the

State of Nebraska, is attempting to subject, or causing to be subjected, Burlington Northern, a citizen of the United States, to deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States, and it is therefore liable to Burlington Northern in a suit in equity for redress."

No other facts are tied to that paragraph. It is simply too broad to deserve to be placed in what has been to this point a lawsuit restricted to an interpretation of the sweep of the Staggers Rail Act and of the Nebraska Public Records Act, Neb. Rev.Stat. § 84–712.01 *et seq.* regarding the requested disclosure of the Burlington Northern–OPPD contract.

Accordingly, the motion for leave to amend complaint, filing 80, will be denied.

## MOTION OF NPPD FOR JUDGMENT ON THE PLEADINGS

Because the motion of NPPD for judgment on the pleadings raises the issue of whether the amended complaint states a claim upon which relief may be granted, I must resolve that issue next.

Resolution turns upon the applicability of the Staggers Rail Act of 1980 and of Nebraska's Public Records Act. In my memorandum on motion for preliminary injunction, dated February 3, 1988, filing 15, I concluded that the Staggers Rail Act of 1980 "does not preempt the Nebraska public records law as to the contracting parties." I find no reason to change my mind about that.

As to Nebraska's Public Records Act, my conclusion is that it is entirely aimed at requiring disclosure and permitting nondisclosure; it does not foresee nor authorize the prohibiting of disclosure. The thrust of the statute is stated as follows:

"(1) Except where any other statute expressly provides that particular information or records shall not be made public, public records shall include all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing. Data which is a public record in its original form shall remain a public record when maintained in computer files.

(2) Sections 84–712 to 84–712.03 shall be liberally construed whenever any state, county or political subdivision fiscal records, audit, warrant, voucher, invoice, purchase order, requisition, payroll, check, receipt or other record of receipt, cash or expenditure involving public funds is involved in order that the citizens of this state shall have full rights to know of, and have full access to information on the public finances of the government and the public bodies and entities created to serve them."

Neb.Rev.Stat. (Reissue 1947) § 84–712.01.

"The following records, unless publicly disclosed in an open court, open administrative proceeding, or open meeting, or disclosed by a public entity pursuant to its duties, *may be withheld* from the public *by the lawful custodian* of the records:

\* \* \* \* \* \*

(3) Trade secrets, academic and scientific research work ... and other proprietary or commercial information which if released would give advantage to business competitors and serve no public purpose ..." (Emphasis added.)

Neb.Rev.Stat. (Reissue 1947) § 84–712.05.

Remedies are provided, and except for a general statement that the court may grant "such other equitable relief as may be proper," all references are to enforcement of a right to disclosure. The burden is upon the "public body to sustain its action." § 84–712.03. The court may assess against the public body that has *denied access* to records reasonable attorneys fees and other costs. § 84–712.07. Nothing suggests that these statutory provisions are intended to set any standard for prohibiting disclosure. Section 49–802, Nebraska Revised Statutes, passed in 1947, declares:

"Unless such construction would be inconsistent with a manifest intent of the Legislature, rules for construction of the statutes of Nebraska hereafter shall be as follows:

(1) When the word may appears, permissive or discretionary action is presumed. When the word shall appears, mandatory or ministerial action is presumed."

The manifest intent of the Legislature would not be violated if the word "may" in § 84-712.05 were interpreted to give the public entity, here OPPD, discretion to withhold from the public specific records. There is no indication that "may" means "shall" in this statute.

In *Chrysler Corp. v. Brown*, 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), the court analysed the Freedom of Information Act saying:

"This case belongs to a class that has been properly denominated 'reverse FOIA' suits. The Chrysler Corp. (hereinafter Chrysler) seeks to enjoin agency disclosure on the grounds that it is inconsistent with the FOIA and 18 U.S.C. § 1905, a criminal statute with origins in the 19th century that proscribes disclosure of certain classes of business and personal information. We agree with the Court of Appeals for the Third Circuit that the FOIA is purely a disclosure statute and affords Chrysler no private right of action to enjoin agency disclosure....

\* \* \* \* \* \*

The organization of the Act is straightforward. Subsection (a), 5 U.S.C. § 552(a), places a general obligation on the agency to make information available to the public and sets out specific modes of disclosure for certain classes of information. Subsection (b), 5 U.S.C. § 552(b), which lists the exemptions, simply states that the specified material is not subject to the disclosure obligations set out in subsection (a). By its terms, subsection (b) demarcates the agency's obligation to disclose; it does not foreclose disclosure.

That the FOIA is exclusively a disclosure statute is, perhaps, demonstrated most convincingly by examining its provision for judicial relief. Subsection (a)(4)(B) gives federal district courts 'jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.' ... That provision does not give the authority to bar disclosure, and thus fortifies our belief that Chrysler, and the courts which have shared its view, have incorrectly interpreted the exemption provisions of the FOIA. The Act is an attempt to meet the demand for open government while preserving workable confidentiality in governmental decision making...."

441 U.S. at 285, 291-92, 99 S.Ct. at 1712.

The same rationale applies here.

■ The federal statute authorizing declaratory and related relief provides no substantive base for a claim. It must either draw its vitality from the substantive statutes asserted or have none. The substantive statutes relied upon—the Staggers Rail Act of 1980, the Nebraska Public Records Act, and the Nebraska Trade Secrets Act—afford no help to the plaintiff. Hence, there is no claim. The motion of NPPD, which is called by NPPD a motion for judgment on the pleadings but states as its ground that the amended complaint "fails to state a claim upon which relief can be granted against NPPD," is either under Rule 12(b) or 12(c). Whichever it is, the test is the same. Assuming the facts alleged to be true, the law relied upon provides no relief. Burlington Northern's motion for summary judgment must be denied for the same reason that NPPD's motion for judgment on the pleadings must be granted as against Burlington Northern.

OPPD has not filed a dispositive motion, but the facts and law asserted are the same for them as for NPPD. I sua sponte, therefore, shall dismiss the plaintiff's case against OPPD.

MOTION OF NPPD FOR SUMMARY
JUDGMENT ON CROSS–CLAIM

 NPPD's cross-claim against OPPD rests upon the provisions of the Nebraska Public Records Act. Summarily stated, that Act requires public bodies, of which OPPD is one, to disclose its records to citizens and persons interested, except for specific exemptions. One of those exemptions is:

"(3) Trade secrets, academic and scientific research work which is in progress and unpublished, and other proprietary or commercial information which if released would give advantage to business competitors and serve no public purpose ..."

Neb.Rev.Stat. (Reissue 1947) § 84–712.05.

Trade secrets, therefore, may be withheld from the public by the lawful custodian of the records. The clause "which if released would give advantage to business competitors and serve no public purpose" does not modify trade secrets. If trade secrets are in a document, the document may be withheld. The issue, then, is whether the contract at issue is a trade secret. I conclude that it is.

The Nebraska Supreme Court has not had an opportunity to interpret the term "trade secrets" in the context of Neb.Rev. Stat. § 84–712.05(3). *Henkle & Joyce Hardware Co. v. Maco, Inc.*, 195 Neb. 565, 239 N.W.2d 772 (1976), relied upon the definition of a trade secret contained in the Restatement of Torts, § 757, comment b. and I am persuaded that such a definition would be the one adopted by the Supreme Court of Nebraska if it were to interpret the statute under consideration here. The features of that definition are (1) that the trade secret may consist of a "formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it;" (2) that the trade secret must be "for continuous use in the operation of the business;" (3) that it may "relate to the sale of goods or to other operations in the business, such as a code for determining discounts, rebates, or other

concessions in a price list or catalog, or a list of specialized customers, or a method of bookkeeping or other office management;" (4) that the trade secret must be secret and not generally known to the public or the industry; and (5) that the factors to be considered in determining whether a trade secret exists relate to the efforts of the owner to keep the information secret and its competitive value if disclosed. *See* Restatement of Torts, § 757, comment b.

In *Black, Sivalls & Bryson, Inc. v. Keystone Steel Fabrication, Inc.*, 584 F.2d 946, 952 (10th Cir.1978), the court said:

"Confidential data regarding operating and pricing policies can also qualify as trade secrets."

Similarly, in *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1260 (3rd Cir.1985), said that a wide array of confidential data relating to materials, labor, overhead, and profit margin not readily obtainable by others in the industry qualifies as a trade secret.

I hold that the burden of proving that the contract is a trade secret has been met by the greater weight of the evidence. The evidence has been provided, essentially, by Burlington Northern for the benefit of OPPD. I have also examined *in camera* a copy of the contract.

The confidential pricing information— here confidential rate setting—obviously gives Burlington Northern an advantage over competitors who do not know or use it. The formula in the contract for escalation of the base contract rate for coal transportation was developed by Burlington Northern as a competitive device to attract utility customers to enter into a contract with Burlington Northern in preference to other carriers. Considerable effort and expense accompanied that development. Contrary to the position of NPPD (I must speak of NPPD's position rather than OPPD's because OPPD really has expressed no position on the issue) I conclude that the formula in the contract is "for continuous use in the operation of the business." It is true that the formula is not freshly exercised daily nor regularly, but the result of it is and, like most accumula-

tions of information, its makeup changes year-to-year if not month-to-month or day-to-day, as new experience is compiled. That information is not generally known to the public or to the industry.

The key provisions of the contract are:

(1) Section 4. VOLUME REQUIRE-MENTS

This sections states the yearly volume requirements and provides the penalties to be paid by OPPD if requirements are not met.

(2) Section 5. SERVICE REQUIRE-MENTS

This section states the specific performance standards BN must achieve as well as resultant penalties if such standards are not met.

(3) Section 6. RATES

This section states the Base Rates and the incentive allowance provisions which BN pays to OPPD on certain tonnage levels as well as provisions regarding UP switching charges.

(4) Section 7. ADJUSTMENT OF RATES AND CHARGES

This section sets forth the rate floor and the formula for escalation of the Base Rates.

(5) Section 8.1. RAILCAR SUPPLY, REPAIR, AND MAINTENANCE

Outlines conditions for supply of equipment, including charges thereto.

(6) Section 12. ACCESSORIAL CHARGES

Involves rates and charges.

(7) Section 15. BILLING AND PAYMENT

Outlines billing and payment terms.

(8) Exhibit B.

This exhibit assigns weight to the specific escalator indices found in Section 7.

Together these provisions form a pattern of terms that Burlington Northern offers to utilities to enter into contracts.

Burlington Northern has gone to considerable lengths to keep the information secret. It has not disclosed the information to persons not directly involved in developing information for formulating this or other similar contracts; it negotiated the contract with a strict confidentiality requirement in it; it instituted and vigorously prosecuted this action against NPPD and OPPD in an effort to obtain a ruling that the contract was not to be disclosed.

It follows that NPPD is not entitled to judgment on its cross-claim.

IT IS ORDERED that:

(1) the motion for leave to amend complaint, filing 80, is denied;

(2) the motion of Nebraska Public Power District for judgment on the pleadings, filing 67, is granted against Burlington Northern Railroad Company;

(3) the motion for summary judgment of plaintiff, Burlington Northern Railroad Company, filing 66, is denied;

(4) the motion of Nebraska Public Power District for summary judgment against Burlington Northern, filing 67, is denied as moot; and

(5) the motion of Nebraska Public Power District for summary judgment against Omaha Public Power District on Nebraska Public Power District's cross-claim, filing 67, is denied.

## JUDGMENT

In accordance with the memorandum and order of today, it is ordered that judgment is entered as follows:

1. for Nebraska Public Power District and Omaha Public Power District on the amended complaint; and

2. for Omaha Public Power District on the cross-claim of Nebraska Public Power District.

Dated August 24, 1988.