STATE OF NEBRASKA EX REL. NEBRASKA HEALTH CARE
ASSOCIATION, APPELLANT, V. DEPARTMENT OF HEALTH AND
HUMAN SERVICES FINANCE AND SUPPORT AND JEFF ELLIOTT,
IN HIS OFFICIAL CAPACITY AS DIRECTOR OF FINANCE AND SUPPORT
FOR THE DEPARTMENT OF HEALTH AND HUMAN SERVICES
FINANCE AND SUPPORT, APPELLEES.

587 N.W. 2d 100

Filed December 18, 1998.    No. S-97-941.

Abbie J. Widger, of Nelson Morris & Titus, for appellant.

Don Stenberg, Attorney General, Royce N. Harper, and Cecile A. Brady for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

The Nebraska Health Care Association (NHCA), the relator-appellant, sued the Nebraska Department of Health and Human Services Finance and Support and its director (collectively Department), seeking a writ of mandamus to compel the Department to release certain documents pursuant to the public records statutes, Neb. Rev. Stat. §§ 84-712 through 84-712.09 (Reissue 1994 & Cum. Supp. 1998). The documents sought were created by the Department as part of its supervision of medicaid payments to Nebraska nursing homes. The documents were requests for information sent by the Department to nursing homes as part of the Department's audits of the claims for reim-

bursement submitted annually by the nursing homes. The issue presented in this case is whether those documents are records produced in the course of an investigation, such that they are exempt from disclosure under the public records statutes.

## PROCEDURAL BACKGROUND

The NHCA is a nonprofit corporation that represents nursing homes and intermediate care facilities in the State of Nebraska. The NHCA sued the Department after the Department refused part of the NHCA's request to review documents relating to the Department's administration of nursing home medicaid reimbursement.

On March 27, 1997, the NHCA had submitted a written request to the Department to review public records as authorized by the public records statutes. The requests generally dealt with records relating to the audit process used by the Department to verify the expenditure claims made by nursing homes seeking medicaid reimbursement. In a letter dated April 3, the Department indicated generally that access to the records would be provided and suggested that the parties meet to coordinate the inspection.

In a letter dated April 23, 1997, the NHCA memorialized the events of an April 22 meeting with the Department. The letter indicated the Department's agreement to allow access to most of the documents but indicated reservations by the Department regarding two particular requests. The NHCA began copying documents on June 16. On July 1, a letter was sent to the NHCA by the Department, as required by § 84-712.04, officially denying access to the documents described by the two remaining requests at issue.

To obtain access to the documents, the NHCA sought a writ of mandamus in the district court, as authorized by § 84-712.03. A hearing was held at which witnesses from the Department and the NHCA testified about the audit process and the nature of the documents at issue. The documents themselves were not examined by the court, with the exception of one audit record that was mistakenly given to the NHCA by the Department.

After the hearing, the district court denied the NHCA's request, finding, based on the evidence presented, that the doc-

uments requested fell within the investigatory records exception to the public records statutes, as set forth in § 84-712.05(5). The NHCA appeals.

## FACTUAL BACKGROUND

The contested requests seek documents relating specifically to the auditing process of the Department. Each year, every nursing home in Nebraska submits detailed cost reports that are used by the Department to calculate the rates at which each facility will receive medicaid reimbursement payments. Cost reports are forms issued by the Nebraska medicaid program in order to gather data and supporting information from nursing homes about the nursing homes' expenses.

These reports are audited by the Department in order to verify that the costs reported are accurate. Moreover, certain expenses of nursing homes are not compensated by medicaid, and the audits are used to distinguish compensable from non-compensable expenses. Two types of audit are used by the Department to verify cost reports: desk audits and field audits.

A desk audit generally occurs every year for each of Nebraska's 230 nursing homes. For a desk audit, an auditor reviews the cost report submitted by the facility and then sends written requests to the facility, seeking documentation for particular aspects of the cost report. The auditor may seek additional documentation for reported costs that seem unusual or are not described in sufficient detail for the Department to determine whether or not they are compensable.

A field audit is more extensive and utilized less often. The Department conducts about 20 to 30 field audits per year, in which an auditor goes "on site" to the nursing home and reviews every aspect of that nursing home's cost report by checking the report against the records that the nursing home maintains. While a field audit is in progress, or after the field work has been completed but before a final report is issued, the auditor may send written requests to the nursing home for additional information the auditor believes to be necessary.

The public records sought by the NHCA and retained by the Department are the written communications from the Department to the nursing homes that are sent out as a part of

the desk and field audit process. Essentially, the NHCA wants copies of the letters that the Department has sent to nursing homes when the Department needs more information from a nursing home to complete a desk or field audit.

## ASSIGNMENTS OF ERROR

The NHCA claims that the district court erred (1) in finding the documents requested by the NHCA are exempt from disclosure as public records pursuant to § 84-712.05(5); (2) in failing to consider that once the Department makes a document public by mailing or faxing it to the entity being investigated, the document is no longer afforded any protection pursuant to § 84-712.05(5); (3) in failing to find the Department waived its right to claim an objection to producing the documents; (4) in failing to find the Department should be estopped from claiming the requested documents are exempt from production; (5) in failing to issue a writ of mandamus ordering the department to produce the public records.

## BURDEN OF PROOF
## AND STANDARD OF REVIEW

### BURDEN OF PROOF

The appropriate burden of proof in this case is established by statute. Section 84-712.03 provides, in relevant part:

> Any person denied any rights granted by sections 84-712 to 84-712.03 may elect to . . . file for speedy relief by a writ of mandamus in the district court within whose jurisdiction the state, county, or political subdivision officer who has custody of said public record can be served . . . .
>
> In any suit filed under this section, the court has jurisdiction to enjoin the public body from withholding records, to order the disclosure, and to grant such other equitable relief as may be proper. The court shall determine the matter de novo and the burden is on the public body to sustain its action.

Pursuant to § 84-712.03, it is clear that the burden of proof in a case such as this is not on the party seeking the writ of mandamus, but on the party attempting to withhold records.

The quantum of proof necessary to sustain the burden of proof is unspecified by the statute. However, we have held that in a mandamus action, the relator must show "clearly and conclusively" that it is entitled to the particular thing the relator asks and that the respondent is legally obligated to act. *State ex rel. Fick v. Miller, ante* p. 387, 393, 584 N.W.2d 809, 815 (1998). In the context of § 84-712.03, the burden of proof has been placed by statute on the public body opposing the issuance of the writ, and we determine that the quantum of proof necessary to sustain this burden should remain the same as in any mandamus action.

This determination is supported by the public policy considerations underlying the statute. Section 84-712.01(3) provides:

> Sections 84-712 to 84-712.03 shall be liberally construed whenever any state, county, or political subdivision fiscal records, *audit*, warrant, voucher, invoice, purchase order, requisition, payroll, check, receipt, or other record of receipt, cash, or expenditure involving public funds is involved in order that the citizens of this state shall have the full right to know of and have full access to information on the public finances of the government and the public bodies and entities created to serve them.

(Emphasis supplied.)

With this public policy consideration in mind, we conclude that the burden is appropriately placed on the Department to show by clear and conclusive evidence that the records sought by the NHCA fit within the bounds of a statutory exception to the disclosure requirement.

Requiring the public body to demonstrate that an exception applies to the disclosure of a particular public record does not, however, change the fact that it is the initial responsibility of the relator to demonstrate that the record in question is a public record within the meaning of § 84-712.01. Under § 84-712.03, a writ may be sought by "[a]ny person denied any rights granted by sections 84-712 to 84-712.03 . . . ." In order to establish standing and jurisdiction, therefore, it must be shown that the party seeking mandamus has been denied rights under § 84-712. A necessary component of this showing is that the party was

seeking a record that is a "public record" within the meaning of § 84-712.01.

Therefore, we hold that when a writ of mandamus is sought pursuant to § 84-712.03, the party seeking the writ must first show (1) that the party is a citizen of the state or other person interested in the examination of the public records, (2) that the document sought by the party is a public record as defined by § 84-712.01, and (3) that the party has been denied the access to the public record guaranteed by § 84-712. Thereafter, if the public body holding the record wishes to oppose the issuance of a writ of mandamus, the public body must show, by clear and conclusive evidence, that the public record at issue is exempt from the disclosure requirement under one of the exceptions provided by § 84-712.05 or § 84-712.08.

### STANDARD OF REVIEW

An action for a writ of mandamus is a law action, and in an appellate review of a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside unless clearly erroneous. *State ex rel. Fick v. Miller, supra; State ex rel. Scoular Prop. v. Bemis,* 242 Neb. 659, 496 N.W.2d 488 (1993); *Young v. Dodge Cty. Bd. of Supervisors,* 242 Neb. 1, 493 N.W.2d 160 (1992).

A claim of equitable estoppel rests in equity, and in an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court. *Friehe v. Schaad,* 249 Neb. 825, 545 N.W.2d 740 (1996); *Redick v. Redick,* 220 Neb. 86, 368 N.W.2d 463 (1985).

### ANALYSIS

#### INVESTIGATORY RECORDS EXCEPTION

It is uncontested in this case that the NHCA is a party entitled to seek access to public records, that the documents at issue in this case are public records under the definition provided in § 84-712.01, and that the Department has denied the NHCA access to the records requested. Therefore, the NHCA has made a prima facie case for release of the records. The issue, then, is whether the Department has met its burden of showing that the

documents fall within an exception to the general disclosure requirement. At trial, the Department offered two exceptions: the trade secrets exception of § 84-712.05(3) and the investigatory records exception of § 84-712.05(5). The Department, however, does not argue trade secrets on appeal.

It is provided by § 84-712.05(5), in relevant part, that public records may be withheld if they are

[r]ecords developed or received by law enforcement agencies and other public bodies charged with duties of investigation or examination of persons, institutions, or businesses, when the records constitute a part of the examination, investigation, intelligence information, citizen complaints or inquiries, informant identification, or strategic or tactical information used in law enforcement training . . . .

It is uncontested by the parties that the Department is a public body charged with duties of investigation. Therefore, the Department must prove that the documents at issue here are part of an investigation or examination, as those are the particular aspects of § 84-712.05(5) that are most relevant to the present case.

Nebraska jurisprudence has not previously set forth any particular standards by which a court can determine what records are part of an investigation. The federal courts, however, in interpreting a similar provision of the federal Freedom of Information Act, 5 U.S.C. § 552 et seq. (1994 & Supp. II 1996), have used a two-part standard for determining whether records are investigatory. It has been held that (1) the agency's investigatory activities that give rise to the documents sought must be related to the enforcement of laws or the maintenance of national security and (2) the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least a colorable claim of its rationality. *Pratt v. Webster*, 673 F.2d 408 (D.C. Cir. 1982). See, also, e.g., *Davin v. U.S. Dept. of Justice*, 60 F.3d 1043 (3d Cir. 1995); *Rosenfeld v. U.S. Dept. of Justice*, 57 F.3d 803 (9th Cir. 1995), *cert. dismissed* 516 U.S. 1103, 116 S. Ct. 833, 133 L. Ed. 2d 832 (1996); *Keys v. U.S. Dept. of Justice*, 830 F.2d 337 (D.C. Cir. 1987).

This analysis has merit. In applying the unique elements of the Nebraska statute, we determine that the corresponding requirement is that a public record is an investigatory record where (1) the activity giving rise to the document sought is related to the duty of investigation or examination with which the public body is charged and (2) the relationship between the investigation or examination and that public body's duty to investigate or examine supports a colorable claim of rationality.

In the present case, the Department is charged with the duty to investigate and examine nursing homes' claims for medicaid reimbursement. The Department's auditing activities are clearly and rationally related to the Department's investigatory duty.

This leaves open the question, however, whether these auditing activities are investigations or examinations within the meaning of § 84-712.05(5). In this instance, again, other jurisdictions have developed standards which are helpful to our analysis.

It has generally been held that a distinction must be drawn between (1) routine administration or oversight activities and (2) focused inquiries into specific violations of law. See, e.g., *Center for Nat. Pol. Rev. on Race & Urb. Is. v. Weinberger*, 502 F.2d 370 (D.C. Cir. 1974); *Rural Housing Alliance v. United States Dept. of Agr.*, 498 F.2d 73 (D.C. Cir. 1974); *Goldschmidt v. United States Dept. of Agriculture*, 557 F. Supp. 274 (D.D.C. 1983); *Gregory v. Federal Deposit Ins. Corp.*, 470 F. Supp. 1329 (D.D.C. 1979), *rev'd in part on other grounds* 631 F.2d 896 (D.C. Cir. 1980); *State ex rel. Yant v. Conrad*, 74 Ohio St. 3d 681, 660 N.E.2d 1211 (1996); *Hechler v. Casey*, 175 W. Va. 434, 333 S.E.2d 799 (1985); *McClain v. College Hosp.*, 99 N.J. 346, 492 A.2d 991 (1985). If a document is compiled ancillary to an agency's administrative function, then it is not protected from disclosure; when, however, an inquiry by an administrative agency departs from the routine and focuses with special intensity on a particular party, an investigation is underway for purposes of the investigatory records exception. *Center for Nat. Pol. Rev. on Race & Urb. Is. v. Weinberger, supra.*

For instance, in *Gould Inc. v. General Services Admin.*, 688 F. Supp. 689 (D.D.C. 1988), the court dealt with the disclosure

of documents relating to government audits of bids for government contracts. The court agreed with the government that

> the audit reports were not prepared as a matter of routine. At the time these reports were in the process of being completed—and perhaps even when they were initiated—[the agency's] inquiry had "departed from the routine" and had "focuse[d] with special intensity" upon specific . . . activities. An investigation was underway.

*Id.* at 697.

Similarly, in the instant case, the activities of the Department had departed from the routine when the auditors began to make specific requests for the production of specific documentation. The Department is charged with the administrative function of reviewing the cost reports submitted by nursing homes. When certain aspects of those reports draw special attention, be they the entire report or simply particular items within the report, then the investigatory duties of the Department have supplanted the Department's routine administration of the medicaid program.

More specifically, it is clear that a field audit is ordinarily a nonroutine investigation by the standard set forth above. It is equally clear that a desk audit departs from the routine, and becomes an investigation, when an auditor's attention is drawn by a particular deficiency in a cost report and the auditor decides to make a specific request for further information. Considering our standard of review on this issue and having reviewed the record, we cannot say that the trial court's determination was clearly erroneous when it found, as a matter of fact, that the records in this case were produced by the Department as part of an investigation.

Therefore, we find no error in the trial court's determination that the documents requested by the NHCA were created by the Department as part of their investigations, as those investigations were rationally related to the investigatory duties imposed by law on the Department. Consequently, the documents may be withheld from disclosure at the discretion of the Department. The NHCA's first assignment of error is without merit.

TRANSMISSION OF DOCUMENTS BY DEPARTMENT

Much of the NHCA's argument on appeal is based on the fact that the Department sent the documents at issue to the individual nursing homes from which it was seeking information. The NHCA argues that since the documents have left the Department, they are no longer subject to the investigatory records exception.

In support of this proposition, the NHCA refers us to § 84-712.05, which states, in relevant part, that the documents described by that section's exceptions may be withheld "unless publicly disclosed in an open court, open administrative proceeding, or open meeting or disclosed by a public entity pursuant to its duties . . . ." The NHCA argues that by sending the documents to nursing homes, the Department has disclosed the documents pursuant to its duties, therefore excluding them from the § 84-712.05 exceptions.

We disagree. The term "disclose" has been defined as "[t]o bring into view by uncovering; to expose; to make known; to lay bare; to reveal to knowledge; to free from secrecy or ignorance . . . ." Black's Law Dictionary 464 (6th ed. 1990). See, also, 26A C.J.S. *Disclose* at 971 (1956 & Supp. 1998); *State v. Krokston*, 187 Mo. App. 67, 172 S.W. 1156 (1915). Simply stated, the Department did nothing with the documents at issue that meets the criteria of this definition. Disclosure, within the meaning of this statute, refers to the exposure of documents to public view and not simply to the transmission of a document to the subject of an agency's investigation.

Moreover, if we were to accept the NHCA's interpretation of this statute, the consequences to personal privacy would be very detrimental. Citizens are currently authorized, under a number of statutory provisions, to review information in the possession of the government that is personal to them. In fact, much of the information described in the disclosure exceptions of § 84-712.05 can be accessed by the particular persons to whom the information relates or from whom it was gathered.

For instance, § 84-712.05(2) provides an exception for medical records. Some of those medical records are made available by statute to the subjects of the records and to certain third parties. For example, under Neb. Rev. Stat. § 81-666 (Reissue

1996), the Department is authorized to release collected personal medical records to medical researchers for research purposes. Under the NHCA's suggested reading of the public records statutes, the transmission of private records to carefully chosen researchers would place those records in the public domain. As further illustration, Neb. Rev. Stat. § 83-109 (Cum. Supp. 1996) provides that patients at state medical and psychiatric institutions may access their own records from those institutions. The NHCA's interpretation of the statute would require us, then, to allow the public at large to access medical records at any time after they have been reviewed by the person whose medical history they contain.

We reject the construction of § 84-712.05 offered by the NHCA. In construing a statute, it is presumed that the Legislature intended a sensible, rather than an absurd, result; an appellate court will, if possible, try to avoid a construction which would lead to absurd, unconscionable, or unjust results. *Hoiengs v. County of Adams*, 254 Neb. 64, 574 N.W.2d 498 (1998), *cert. denied* ___ U.S. ___, 119 S. Ct. 339, 142 L. Ed. 2d 280. We conclude that records that have been "disclosed" within the meaning of § 84-712.05 are only those records that a public body has, in its official capacity, already made available to the general public. That has not happened in the instant case, and the NHCA's argument is without merit.

### EQUITABLE ESTOPPEL

Finally, the NHCA contends that the Department should be estopped from claiming an exception to the disclosure requirement due to the Department's delay in notifying the NHCA that some of its requests for production would not be granted. Specifically, the NHCA has invoked the doctrine of equitable estoppel. The NHCA argues that the Department has the discretion to retain or release documents which meet the requirements of the § 84-712.05 exceptions and that the Department has waived that discretion by its delay in this case.

The elements which must be satisfied for equitable estoppel to apply are, as to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression

that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or persons; and (3) knowledge, actual or constructive, of the real facts; and, as to the other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice. *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998); *Inner Harbour Hospitals v. State*, 251 Neb. 793, 559 N.W.2d 487 (1997); *Bohl v. Buffalo Cty.*, 251 Neb. 492, 557 N.W.2d 668 (1997).

The doctrine of equitable estoppel, however, will not be invoked against a governmental entity except under compelling circumstances where right and justice so demand; in such cases, the doctrine is to be applied with caution and only for the purpose of preventing manifest injustice. *Inner Harbour Hospitals v. State, supra*; *State v. Nebraska Assn. of Pub. Employees*, 239 Neb. 653, 477 N.W.2d 577 (1991).

In the present case, the NHCA has presented no evidence of injury, detriment, or prejudice based on the 26-day delay before the Department gave an oral notice that certain documents might be withheld, or the 96-day delay before the Department issued a written denial of access to those documents. We can discern, on this record, no evidence whatsoever of prejudice to the NHCA or any of its members, much less the "manifest injustice" necessary to justify the invocation of equitable estoppel against the State.

Moreover, there is no evidence that the Department misled or deceived the NHCA regarding the Department's intent to release the records. The NHCA claims that the Department's initial response to the NHCA's request for documents expressed an intent to fully comply with the NHCA's request. However, the NHCA's claim is unsupported by a reading of the Department's April 3, 1997, letter. The letter from the Department to the NHCA indicates an intent to release *some* of the requested records and identifies those particularly, but does not address

the documents at issue in the present case. The letter concludes by promising nothing more than a meeting to coordinate examination. This letter, simply put, was not misleading regarding the Department's intent to release the records at issue.

It has been held that in the absence of misrepresentation, when a person, knowing his or her rights, takes no steps to enforce those rights until the adverse party has, in good faith, changed his or her position such that the adverse party cannot be restored to that party's former state if the rights are enforced, the delay becomes inequitable, and the person is estopped from asserting the rights. *Welch v. Welch*, 246 Neb. 435, 519 N.W.2d 262 (1994). The NHCA contends that the Department's failure to assert its rights to withhold documents should, under this authority, deprive it of its statutory discretion to do so. This argument is without merit. As noted above, there is no evidence that the NHCA has been prejudiced by the Department's delay in asserting its rights. In the absence of prejudice, equitable estoppel will not be invoked.

## CONCLUSION

We find no clear error in the trial court's finding that the Department met its burden of showing that the records requested by the NHCA fall within the ambit of an exception to the disclosure requirement of the public records statutes. Moreover, we find no basis for the NHCA's argument that equitable estoppel should be invoked against the Department. Consequently, the judgment of the trial court is affirmed.

AFFIRMED.