REQUESTED BY: Douglas D. Christensen Commissioner of Education
This opinion is written in response to your request for an opinion to clarify a public records issue. In your letter you state that, pursuant to state statute, the Commissioner of Education is responsible for issuing teaching and administrative certificates to qualified individual applicants. Specifically, you cite Neb. Rev. Stat. § 79-305 and Neb. Rev. Stat. §§ 79-801
through 79-816 and regulations promulgated thereunder, 92 NAC 21 and 92 NAC 23. Individuals seeking certification fill out and submit applications to the Department of Education ("Department"). The certificate application states that materials furnished to the Department by an applicant become the property of the Department. Other information gathered as part of the certification process include criminal conviction records, college academic transcripts, scores on basic skills competency examinations, college recommendations, verification of teaching experience, request for issuance of a certificate from a school, copies of other states' certificates, employment records, and mental health records or statements.
Public records are defined at Neb. Rev. Stat. § 84-7121.01:
 [P]ublic records shall include all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing. . . .
These records are generally open to public inspection.
 Except as otherwise expressly provided by statute, all citizens of this state, and all other persons interested in the examination of the public records, as defined in section 84-712.01, are hereby fully empowered and authorized to examine the same, and to make memoranda and abstracts therefrom. . . .
Neb. Rev. Stat. § 84-712.
Records falling under the purview of Neb. Rev. Stat. §84-712.05 may be withheld from public disclosure at the discretion of the agency charged with custody of the records. Subsection (5) of § 84-712.05 authorizes public bodies to withhold records which are part of an investigation or examination.
 The following records . . . may be withheld from the public by the lawful custodian of the records: (5) Records developed or received by law enforcement agencies and other public bodies charged with duties of investigation or examination of persons, institutions, or businesses, when the records constitute a part of the examination, investigation, intelligence information, citizen complaints or inquiries, informant identification, or strategic or tactical information used in law enforcement training, except that this subdivision shall not apply to records so developed or received relating to the presence of and amount or concentration of alcohol or drugs in any body fluid of any person;
Neb. Rev. Stat. § 84-712.05(5) (Supp. 1999) ("investigation or examination exception").
The Attorney General's office has issued two previous opinions discussing public records which are part of an examination. In Op. Att'y Gen. No. 123 (June 7, 1983), this office concluded that the results of written examinations conducted by the State Board of Examiners for Professional Engineers and Architects ("State Board") could properly be withheld from public disclosure under this exception where the State Board administers the examination as part of its duty to determine an applicant's qualifications to practice as a professional engineer or architect. Shortly thereafter this office issued Op. Att'y Gen. No. 128 (June 27, 1983) reaching a similar conclusion that certain agency records could be withheld under this same exception. The records at issue were received by the Department of Roads where the Department of Roads was required by federal regulation to examine records of ownership, personnel qualifications, and financial strength of companies seeking qualification as Minority Business Enterprises.
More recently, the Nebraska Supreme Court rendered a decision discussing public records which are part of an investigation. InNebraska Health Care Association v. Department of Health andHuman Services Finance and Support, 255 Neb. 784, 587 N.W.2d 100
(1998), the Nebraska Health Care Association ("NHCA") sought to obtain documents created by the Department of Health and Human Services ("HHS") as part of its supervision of medicaid payments to Nebraska nursing homes where it audits claims for reimbursements submitted annually by the nursing homes.
Nursing homes in Nebraska annually submit detailed cost reports that are used by HHS to calculate the rates at which each nursing home will receive medicaid reimbursement payments. HHS conducts desk and field audits to verify that the costs reported are accurate and to distinguish compensable from non-compensable expenses. NHCA sought to review written communications from HHS to the nursing homes where HHS needed additional information from the nursing homes in order to complete its desk or field audits.
To determine whether records are part of an investigation for purposes of § 84- 712.05(5), the supreme court in Nebraska HealthCare Association adopted a two part standard based on the federal Freedom of Information Act ("FOIA"). "[A] public record is an investigatory record where (1) the activity giving rise to the document sought is related to the duty of investigation or examination with which the public body is charged and (2) the relationship between the investigation or examination and that public body's duty to investigate or examine supports a colorable claim of rationality." Nebraska Health Care Association, 255 Neb. At 792, 587 N.W.2d at 106.
The court further noted that a distinction should be drawn between routine oversight activities and a more focused inquiry. "It has generally been held that a distinction must be drawn between (1) routine administration or oversight activities and (2) focused inquiries into specific violations of law." Id. "If a document is compiled ancillary to an agency's administrative function, then it is not protected from disclosure; when, however, an inquiry by an administrative agency departs from the routine and focuses with special intensity on a particular party, an investigation is underway for purposes of the investigatory records exception." Id. at 792, 587 N.W.2d at 106-107.
The supreme court concluded in Nebraska Health CareAssociation that HHS could properly withhold the documents from public disclosure under the investigation exception of §84-712.05. "[I]n the instant case, the activities of the Department had departed from the routine when the auditors began to make specific requests for the production of specific documents. The Department is charged with the administrative function of reviewing the cost reports submitted by nursing homes. When certain aspects of those reports draw special attention, be they the entire report or simply particular items within the report, then the investigatory duties of the Department have supplanted the Department's routine administration of the medicaid program." Id. at 793, 587 N.W.2d at 107.
The federal FOIA was enacted in 1966 to provide public access to records held by the federal government. It was substantively amended in 1974 and 1986. Certain information was exempt from public disclosure since its enactment in 1966. One of those exemptions was "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency." 5 U.S.C. § 552(b)(7) (1966) ("investigatory exemption"). The investigatory exemption was narrowed in 1974 when "files" was changed to "records" and six specific harms were added, stating that investigatory records could be withheld from disclosure if their release would cause one of the six specific harms. The requirement of proving actual harm was removed in 1986 when "would" was substituted with "could reasonably be expected to;" in addition, "investigatory records" was replaced with "records or information." The investigatory exemption, as currently contained within the FOIA, states that the disclosure requirements do not apply to "records or information complied for law enforcement purposes, but only to the extent that the production of such law enforcement records or information" could reasonably be expected to interfere with enforcement proceedings, deprive someone of a fair trial, be an unwarranted invasion of privacy, disclose the identity of a confidential source, disclose certain law enforcement techniques, procedures or guidelines, or endanger the life or physical safety of an individual.
Nebraska's public records statute, on the other hand, was enacted in 1866 by its territorial legislature. Section84-712.05, authorizing state agencies to withhold certain records from public disclosure, was implemented in 1979 with the passage of LB 86. Subsection (5) of § 84-712.05 states that records may be withheld from public disclosure if they were "developed or received by law enforcement agencies and other public bodies charged with duties of investigation or examination of persons, institutions, or businesses, when the records constitute a part of the examination, investigation, intelligence information, citizen complaints or inquiries, informant identification, or strategic or tactical information used in law enforcement training, except that this subdivision shall not apply to records so developed or received relating to the presence of and amount or concentration of alcohol or drugs in any body fluid of any person."
Although the investigation or examination exception was not discussed on the floor of the legislature during the enactment of LB 86, it was discussed at the committee hearing. Discussion was held on four areas of records held by the Nebraska Department of Banking which it proposed be kept confidential. These records are reports of examination prepared at least once each year on all financial institutions subject to examination by the Department of Banking, computer records generated during the bank examinations, investigations of security fraud and "confidential correspondence," which includes applications for licensing of executive officers or security officers and communication relating to the financial statements or financial condition of certain persons. Senator Murphy, the introducer of LB 86, and Alan Peterson representing Media of Nebraska, a major proponent of the bill, both stated that LB 86 exempted from public disclosure all of the records of concern to the Department of Banking. "So if you refer to your white copy, I think it brings into completeness all of the objections that have been raised by industry, by the University, by the Department of Banking, and I think is as explicit as we can get." Hearing on LB 86 Before the Gov't, Military Veterans Affairs Comm., 86th Leg., 1st Sess. 2 (Feb. 9, 1979) (statement of Senator Murphy). "Department of Banking, they made up their list of proposed exceptions, of which there were four, and they distributed them and they gave them to me in advance. I believe that they are all covered by the provision that we have in the exceptions now." Id. at 28 (closing comment by Alan Peterson).
We believe a fair comparison of the Nebraska exception to the federal one reaches the conclusion that Nebraska's exception is broader than that found in the FOIA. Under the FOIA, records must be compiled for law enforcement purposes and be reasonably expected to interfere with one of the six "harms" to be lawfully withheld from public disclosure. Under the Nebraska public records statute, the records must be part of a state entity's duty of investigation or examination of persons, institutions or businesses to be lawfully withheld from public disclosure. Those involved in drafting LB 86 testified before the Government, Military and Veterans Affairs Committee that annual bank examinations conducted by the Department of Banking and computer records generated thereunder, as well as information compiled as part of the Department of Banking's application process for licensing of executive officers and security officers, fit within the investigation or examination exception of § 84-712.05.
We also believe this position is not inconsistent with the court's decision in Nebraska Health Care Association. The records sought and ruled upon by the supreme court were records of investigations conducted by HHS to verify that costs reported were accurate and to distinguish compensable from non-compensable expenses. Specifically, they were written communication from HHS to nursing homes requesting additional information as part of a desk or field audit. Desk audits are generally conducted annually for each of Nebraska's 230 nursing homes. Field audits, which are more extensive on-site investigations, occurred less frequently with HHS conducting 20 to 30 per year.
Section 84-712.05(5) allows public agencies in Nebraska to keep certain records confidential when they involve an "investigation or examination." "The word `or,' when used properly, is disjunctive." Pfizer v. Lancaster County Bd. ofEqualization, 260 Neb. 265, 281, 616 N.W.2d 326 (2000). "We have said that `or,' when used properly, is disjunctive, and `and' is conjunctive." Baker's Supermarkets v. State, 248 Neb. 984, 993,540 N.W.2d 574, 581 (1995). "The words are so frequently interchanged that in construing a civil statute, `or' may be read as `and' where a strict reading would lead to an absurd or unreasonable result and defeat the intent of the statute." Id.
We don't find that a strict reading of "or" in the investigation or examination exception of § 84-712.05(5) would lead to an absurd or unreasonable result and defeat the intent of the statute. "By the use of different words, Nebraska statutes distinguish between [those words]." M D Masonry, Inc. v. Universal Surety Co.,6 Neb. App. 215, 222, 572 N.W.2d 408, 413 (1997). The Department of Education, similar to the Department of Banking, is charged with duties of examination of persons in order to determine whether to issue a license to those individuals. The Department of Education compiles its records for the purpose of issuing teaching and administrative certificates to qualified applicants. If the Department concludes that an individual is a qualified applicant, then it issues the appropriate certificate. This scenario, while outside of the scope of the investigations discussed in NebraskaHealth Care Association, also falls within the purview of subsection (5) of § 84-712.05.
Based on the above analysis, we conclude that the records developed or received by the Department of Education pursuant to its duties of examining persons for the purpose of issuing teaching and administrative certificates to qualified applicants fit within the investigatory or examination exception set forth in § 84-712.05(5). You state in your letter that the Department has operated under a policy allowing public disclosure of the certification records. The public records statutes allow the Department to continue this practice. Section 84-712.05 does not require state entities to withhold records which fall within any of the exceptions enumerated therein, but gives them the option to withhold such records from public disclosure. "The following records . . . may be withheld from the public by the lawful custodian. . . ." Neb. Rev. Stat. § 84-712.05 (Supp. 1999). SeealsoBurlington Northern R.R. v. O.P.P.D., 703 F. Supp. 826 (D.Neb. 1988), aff'd, 888 F.2d 1228 (8th Cir. 1989). Therefore, the Department's current policy is in compliance with Nebraska's public records statutes. Based upon the facts presented in your letter, it appears that the certification records do not qualify for any of the other exceptions enumerated in § 84-712.05.
Sincerely,
DON STENBERG
Attorney General
Charlotte R. Koranda
Assistant Attorney General
Approved by:
________________________________
Attorney General 42-242-10.4