IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

BOPPRE V. OVERMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JEFF BOPPRE, APPELLANT,

V.

MARK OVERMAN, SCOTTS BLUFF COUNTY SHERIFF, APPELLEE.

Filed November 22, 2016.    No. A-15-1135.

Appeal from the District Court for Scotts Bluff County: RANDALL L. LIPPSTREU, Judge. Affirmed in part, and in part reversed and remanded with directions.

Jeff Boppre, pro se.

Dave Eubanks, Scotts Bluff County Attorney, for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Jeff Boppre, an inmate at the Tecumseh State Correctional Institution, sent public records request letters to Scotts Bluff County Sheriff Mark Overman under Neb. Rev. Stat. § 84-712 (Reissue 2014), seeking records related to two murders that Boppre was convicted of committing, as well as records related to the deaths of two other individuals. Boppre's requests were mostly denied, and he sought a writ of mandamus from the district court for Scotts Bluff County. Boppre's petition for writ of mandamus was sustained in part and denied in part. Boppre appealed the district court's decision. For the reasons that follow, we affirm in part, and in part reverse and remand with directions.

- 1 -

## II. BACKGROUND

Boppre sent a letter to Overman dated March 14, 2015, wherein Boppre requested copies of various "public records" pursuant to § 84-712. Boppre set forth 20 separately numbered paragraphs containing his requests for copies of various documents, records, photographs, evidence, and other items related to "the Valdez & Condon murders where Jeff Boppre was wrongly convicted." We have set forth the contents of Boppre's 20 separately numbered paragraphs in full in appendix A, which is attached to our opinion. In response to Boppre's requests, Overman sent a letter to Boppre stating, "Investigative records are not subject to the public records request that you have filed." Overman further stated, "To the best of my knowledge, everything that you have requested that is in the custody of law enforcement has been turned over to your attorneys." Overman's responses are incorporated into appendix A.

On April 6, 2015, Boppre filed a pro se "Petition for Writ of Mandamus" asking the court to issue an order compelling Overman to "release all requested documents, records and any other evidence held in custody or in the Scottsbluff [C]ounty, pursuant to the Nebraska Public Records [L]aw." See Neb. Rev. Stat. § 84-712 et seq. (Reissue 2014) (public records statutes). Boppre referenced and incorporated into his petition his letter to Overman dated March 14, 2015. He also attached the letter Overman sent in response. Boppre alleged that Overman's response was not in compliance with § 84-712.04. He also asked the court to enforce the penalty provisions of § 84-712.09 against Overman for his violations of the public records statutes.

In his answer filed on April 23, 2015, Overman generally denied Boppre's allegations, stating that specific requests by Boppre were statutorily exempt from public access. Overman claimed other items requested by Boppre were previously provided to Boppre's various attorneys over the last 27 years, or were items not in the possession of or otherwise available to Overman. Overman's responses are incorporated into appendix A.

Boppre sent another letter to Overman dated April 23, 2015, wherein Boppre requested copies of more "public records" pursuant to § 84-712. Boppre set forth 40 separately numbered paragraphs containing his requests for copies of various documents, records, photographs, evidence, and other items related to the Valdez and Condon murders, the death of Dolores Boppre, the death of Steven Schlothauer, and "Joe Richter who was shot in the head." We have set forth the contents of Boppre's 40 separately numbered paragraphs in full in appendix B, which is attached to our opinion. In response to Boppre's requests, Overman sent a letter to Boppre individually addressing each of his 40 requests. With regard to some of the requests, Overman stated "[w]e are providing you with the public record portion of the report." With regard to the remaining requests, Overman gave variations of the following: "[w]e have no such records"; "[t]he reports requested are not public record"; or "all of the requested items have been turned over to your attorneys through the discovery process, and witnesses testified to the circumstances at trial. The trial transcript is available to you through your attorneys." Overman's responses are incorporated into appendix B.

On April 27, 2015, Boppre filed a "motion for depositions," pursuant to Neb. Rev. Stat. § 29-1917 (Cum. Supp. 2014) (allowing for depositions of witnesses in felony prosecutions). Boppre asked that the court permit him to take the depositions of several people he believed had

testimony which "may be material or relevant" to the mandamus action. He alleged that the evidence the individuals would provide to the court "is relevant to the wrongful conviction of [Boppre] for the past 27 years and is significant to obtain the requested information that Defendant Mark Overman has waived his right to argue the release of all information."

On June 29, 2015, Boppre filed an amended petition for writ of mandamus asking the court to issue an order compelling Overman to "release all requested documents, records and any other evidence held in custody or in the Scottsbluff [C]ounty, pursuant to the Nebraska Public Records [L]aw." Boppre referenced and attached his letters to Overman dated March 14 and April 23, as well as the letters Overman sent to Boppre in response. Boppre again alleged that Overman's responses were not in compliance with § 84-712.04. He also asked the court to enforce the penalty provisions of § 84-712.09 against Overman for his violations of the public records statutes.

A hearing was held on October 14, 2015. The court received into evidence the letters from Boppre to Overman dated March 14 and April 23, as well as the letters Overman sent to Boppre in response. The court also received into evidence Boppre's "motion to offer evidence at October 14th hearing for writ of mandamus" with six attachments (various motions, journal entries, and documents from his criminal case). Boppre called one witness, a lieutenant with the Scotts Bluff County Sheriff's Office. However, the district court sustained the State's objections to most of Boppre's questions because they went to the merits of Boppre's claims that he was "wrongfully convicted" rather than whether or not the writ of mandamus should be issued.

In a "Memorandum Order" filed on November 17, 2015, the district court denied Boppre's motion to take depositions. The court then addressed the merits of Boppre's amended petition for writ of mandamus and found that most of the requested records were exempt investigatory records. The court said:

> [I]t is abundantly clear Boppre's mandamus action seeks documents directly related to the Condon/Valdez murder investigation and the 1992 investigation of Dolores Boppre's death. It is equally clear such documents generally fall within the plain and ordinary meaning of the Section 84-712.05(5) exception because they are records developed or received by law enforcement agencies as part of an investigation. That is true even where the investigation was against Boppre. See Sileven v. Spire, 243 Neb. 451 (1993) (Section 84-712 applies equally to all persons).
>
> The court notes that the disclosure of public records pursuant to Sections 84-712 et seq. is markedly different from discovery of evidence under the Nebraska criminal procedure statutes, Sections 29-1912 et seq.

(Emphasis in original).

The district court then made the following findings. With respect to Boppre's March 14, 2015, request for documents (see appendix A):

I.    Requests numbered 1, 2, 3, 4, 5, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, and 20 are exempt from disclosure as records developed or received as part of an investigation pursuant to Section 84-712.05(5).

II.   Requests numbered 6, 8, and 18 represent routine administrative or oversight activities rather than a focused inquiry into specific law violations. If Overman is

- 3 -

in possession of any such documents, then copies shall be provided to Boppre free of charge within 10 days. If Overman does not possess those documents that fact shall also be disclosed to Boppre within 10 days of the date of this Order.

With respect to Boppre's April 23, 2015, request for documents (see appendix B):

III. Requests numbered 1, 3, 4, 9, 17, 18, 19, 21, 22 (in part), 27, 28, 29, 30, 34, 36, and 37 are exempt from disclosure as records developed or received as part of an investigation pursuant to Section 84-712.05(5).

IV. Overman appropriately responded to requests numbered 2, 5, 6, 7, 8, 10, 11, 12, 13, 14, 15, 16, 20, 22, 23, 24, 25, 26, 33, 35, 38, 39, and 40.

V. If Overman is in possession of any documents identified in Requests numbered 31 and 32 he shall provide Boppre with a copy within 10 days of the date of this order. If Overman does not possess those documents that fact shall also be disclosed to Boppre within 10 days of the date of this Order.

The district court noted:

Ruling on the aforementioned matters was made difficult by both parties' apparent confusion between the right to access public records and criminal procedure discovery statutes; Boppre's status as both a citizen of this State and the focus of the underlying criminal investigation; Boppre's attempts to insert interrogatories into the request for documents; and Boppre's confusion that Overman should possess documents and records of governmental offices and agencies other than the Sheriff's Office.

In accordance with its above findings, the district court partially sustained and partially overruled Boppre's amended petition for a writ of mandamus. Boppre now appeals.

## III. ASSIGNMENTS OF ERROR

Restated, Boppre assigns that the district court erred by: (1) denying his motion to take depositions; (2) not granting the writ of mandamus in full or, alternatively, granting an alternative writ of mandamus before denying the writ in part; (3) finding the requested documents were exempt from disclosure because they were investigatory in nature; (4) not determining what documents were segregable pursuant to § 84-712.06; and (5) not holding Overman accountable for violating the public records statutes.

## IV. STANDARD OF REVIEW

Mandamus is a law action, and it has been defined as an extraordinary remedy, not a writ of right. In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict. An appellate court will not disturb those findings unless they are clearly erroneous. Whether to grant a writ of mandamus is within the trial court's discretion. *State ex rel. Unger v. State*, 293 Neb. 549, 878 N.W.2d 540 (2016).

- 4 -

## V. ANALYSIS

### 1. MOTION FOR DEPOSITIONS

Boppre argues that the district court erred in denying his motion to take depositions of relevant witnesses. Boppre's reliance on *State ex rel. Stivrins v. Flowers*, 273 Neb. 336, 729 N.W.2d 311 (2007), and *State ex rel. Acme Rug Cleaner v. Likes,* 256 Neb. 34, 588 N.W.2d 783 (1999), in support of his argument is misplaced. Both of these cases allowed the issuance of a writ of mandamus to limit discovery in an underlying action; the cases do not stand for the proposition that discovery is allowed in a mandamus action.

Boppre filed his "motion for depositions," pursuant to § 29-1917. In denying Boppre's motion, the district court stated that § 29-1917 is part of the Nebraska Criminal Procedure and is not applicable to a mandamus action. We agree. We find no provision in the public records statutes which allows for the taking of depositions; we affirm the decision of the district court to deny Boppre's motion to take depositions.

### 2. WRIT OF MANDAMUS

#### (a) Law in General

In this case, Boppre seeks access to various "public records." Nebraska's public records statutes can be found at § 84-712 et seq. Section 84-712(1) provides that "[e]xcept as otherwise expressly provided by statute, all citizens of this state and all other persons interested in the examination of the public records as defined in section 84-712.01 are hereby fully empowered and authorized" to examine such records. The phrase "public records" is defined by § 84-712.01(1), which provides in part:

> Except when any other statute expressly provides that particular information or records shall not be made public, public records shall include all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau, commission, council, subunit, or committee of any of the foregoing.

Section 84-712.05 sets forth certain categories of records "which may be withheld from the public." See, also, § 84-712.08 (federal government exception). A person denied access to a public record may elect to file for speedy relief by a writ of mandamus. § 84-712.03.

Traditionally, "mandamus" was a law action and was defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law. *State ex rel. Adams Cty. Historical Soc. v. Kinyoun*, 277 Neb. 749, 765 N.W.2d 212 (2009). See, also, Neb. Rev. Stat. § 25-2157 (Reissue 2008) (writ of mandamus may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law).

A party seeking a writ of mandamus under § 84-712.03 has the burden to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the document sought is a public record as defined by § 84-712.01, and (3) the requesting party has been denied access to the public record as guaranteed by § 84-712. *Steckelberg v. Nebraska State Patrol*, 294 Neb. 842, 885 N.W.2d 44 (2016). If the requesting party satisfies its prima facie claim for release of public records, the public body opposing disclosure must show by clear and convincing evidence that § 84-712.05 or § 84-712.08 exempts the records from disclosure. *Id.* See, also, § 84-712.03 (burden upon public body to demonstrate reason to withhold requested records).

There appears to be no dispute in this case that Boppre satisfied his prima facie claim for release of public records. Thus, the only remaining question is whether Overman showed by clear and convincing evidence that the requested records were exempt from disclosure.

In denying Boppre's requests, Overman relied on § 84-712.05(5) which exempts investigatory records from disclosure. Section 84-712.05 provides in relevant part as follows:

> The following records, unless publicly disclosed in an open court, open administrative proceeding, or open meeting or disclosed by a public entity pursuant to its duties, may be withheld from the public by the lawful custodian of the records:
>
> . . . .
>
> (5) Records developed or received by law enforcement agencies and other public bodies charged with duties of investigation or examination of persons, institutions, or businesses, when the records constitute a part of the examination, investigation, intelligence information, citizen complaints or inquiries, informant identification, or strategic or tactical information used in law enforcement training . . . .

A public record is an investigatory record where (1) the activity giving rise to the document sought is related to the duty of investigation or examination with which the public body is charged and (2) the relationship between the investigation or examination and that public body's duty to investigate or examine supports a colorable claim of rationality. *State ex rel. Neb. Health Care Assn v. Dept. of Health*, 255 Neb. 784, 587 N.W.2d 100 (1998). Furthermore, a distinction must be drawn between (1) routine administration or oversight activities and (2) focused inquiries into specific violations of law. *Id.* If a document is compiled ancillary to an agency's administrative function, then it is not protected from disclosure; when, however, an inquiry by an administrative agency departs from the routine and focuses with special intensity on a particular party, an investigation is underway for purposes of the investigatory records exception. *Id.*

Finally, § 84-712.06 provides that "any reasonably segregable public portion of a record shall be provided to the public as a public record upon request after deletion of the portions which may be withheld."

With the above information in mind, we now review the district court's decision. The State offered no position as to the specific claims made by Boppre; its brief contains only one page of argument and generally claims, without any discussion of the specific public record requests, that the district court "did not err in ruling that certain requested items were exempt from disclosure by Neb. Rev. Stat. § 84-712.05(5)." Brief for appellee at 3.

(b) Requests From March 14, 2015

We first address Boppre's March 14, 2015, request for documents. See appendix A (to aid the reader, we have incorporated into the appendix Overman's responses, as well as the dispositions of both the district court and this court). The district court granted the requests in paragraphs numbered 6, 8, and 18. Accordingly, those requests are not at issue on appeal.

The district court found that the remaining requests were "exempt from disclosure as records developed or received as part of an investigation" pursuant to § 84-712.05(5). We agree that the majority of Boppre's requests were clearly investigatory in nature. However, we must be mindful that the requested records would not be exempt under § 84-712.05(5) if they were publicly disclosed in an open court. And we do not know what, if any, of the records requested by Boppre were publicly disclosed in an open court. Regardless, we find that the district court properly denied the writ of mandamus with respect to the requests in paragraphs 1-5, 7, 11-17, and 19-20, as we now explain.

As stated previously, a writ of mandamus may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law. § 25-2157. In his answer, in addition to claiming the investigatory exemption, Overman stated that several of the records Boppre requested were items available through the criminal court proceedings and had been previously provided to Boppre and his various attorneys over the last 27 years. Overman stated that additional records (in paragraphs 2 and 16, for example) were likely available via other sources such as the court reporter or the district court. Thus, Boppre had another adequate remedy to access the requested records (e.g., through his attorneys or in the criminal court proceedings). Accordingly, the requested records in paragraphs 1-5, 7, 11-17, and 19-20 were either exempt as investigatory in nature (§ 84-712.05(5)), or there was another adequate remedy available to Boppre. Based on slightly different reasoning, we affirm the district court's denial of the writ in regards to paragraphs 1-5, 7, 11-17, and 19-20. *Lindsay v. Fitl*, 293 Neb. 677, 879 N.W.2d 385 (2016) (where record demonstrates that decision of trial court is ultimately correct, although such correctness is based on ground or reason different from that assigned by trial court, appellate court will affirm).

With respect to the records requested in paragraphs 9 and 10, we affirm, in part, the district court's denial of the writ of mandamus for the same reasons as above--investigatory in nature or availability of another adequate remedy. However, the writ of mandamus should have been granted with respect to those portions of paragraphs 9 and 10 that involve the expenditure of public funds. See § 84-712.01(3) (§§ 84-712 to 84-712.03 shall be liberally construed whenever the expenditure of public funds is involved). See, also, *Evertson v. City of Kimball*, 278 Neb. 1, 767 N.W.2d 751 (2009) (noting same). Specifically, we reverse the district court's denial of the writ of mandamus with respect to the portion of paragraph 9 seeking the expense records for motel, food, and gas. We also reverse the denial of the writ of mandamus with respect to the portion of paragraph 10 seeking expense records for the jail stay. We remand the matter to the district court with directions to issue a writ of mandamus ordering Overman to provide Boppre with such documents if he is in possession of them, and if Overman does not possess those documents to disclose that fact to Boppre.

Although we have found that the public records statutes allow Boppre to have access to the expense records for motel, food, and gas, and the expense records for the jail stay, we can discern no reasonable basis for his request. The information in the expense records is hardly the kind that would aid Boppre in his quest to show that he was "wrongly convicted," and we see no other reason for wanting the information. However, the Nebraska public records statutes, as they currently exist, do not limit Boppre's access to such records. But, see, *Giarratano v. Johnson*, 456 F. Supp. 2d 747 (W.D. Va. 2006), *aff'd*, 521 F.3d 298 (4th Cir. 2008) (statutory exclusion of prisoners from making requests for public records under Virginia Freedom of Information Act constitutional; Va. Code Ann. § 2.2-3703); *Burt v. Washington State Dep't of Corr.*, 168 Wash. 2d 828, 231 P.3d 191 (2010), *as corrected* (Sept. 14, 2010) (Washington legislature has enacted legislation that will greatly curtail abusive prisoner requests for public records; Wash. Rev. Code Ann. 42.56.565); *Revere v. Canulette*, 715 So. 2d 47 (La. App. 1 Cir. 1998) *writ granted in part and remanded*, 730 So. 2d 870 (La. 1999) (public records law statute limiting inmates' access to copies of matters in the public record did not violate Federal or State Constitution; La. Stat. Ann. § 44:31.1); *Rosenthal v. Hansen*, 34 Cal. App. 3d 754, 110 Cal. Rptr. 257 (Ca. App. 1973) (under California Public Records Act, persons may secure copies of specific documents but the various public departments may impose reasonable restrictions on general requests for voluminous classes of documents restricting copies to specific requests for copies of specific documents; implied rule of reasonableness).

(c) Requests From April 23, 2015

We next address Boppre's April 23, 2015, request for documents. See appendix B (to aid the reader, we have incorporated into the appendix Overman's responses, as well as the dispositions of both the district court and this court). The district court granted the requests numbered 31 and 32. Accordingly, those requests are not at issue on appeal.

The district court found that the requests in 1, 3-4, 9, 17-19, 21, 22 (in part), 27-30, 34, and 36-37 were "exempt from disclosure as records developed or received as part of an investigation" pursuant to § 84-712.05(5). We agree that the majority of Boppre's requests were clearly investigatory in nature. Again, we must be mindful that the requested records would not be exempt under § 84-712.05(5) if they were publicly disclosed in an open court. But we do not know what, if any, of the records requested by Boppre were publicly disclosed in an open court. Regardless, we find that the district court properly denied the writ of mandamus with respect to the requests in paragraphs 1, 3-4, 9, 17-19, 21, 22, 27-30, 34, and 36-37. The requested records in these paragraphs were either exempt as investigatory in nature via § 84-712.05(5), or there was another adequate remedy available to Boppre (e.g., documents related to the Valdez/Condon murders were previously provided to Boppre's various attorneys). Based on slightly different reasoning, we affirm the district court's denial of the writ of mandamus with respect to paragraphs 1, 3-4, 9, 17-19, 21, 22, 27-30, 34, and 36-37. *Lindsay v. Fitl, supra* (where record demonstrates that decision of trial court is ultimately correct, although such correctness is based on ground or reason different from that assigned by trial court, appellate court will affirm).

The district court found that Overman properly responded to the requests in paragraphs 2, 5-8, 10-16, 20, 22, 23-26, 33, 35, and 38-40. We agree with the district court's findings, except

with respect to paragraph 20 as discussed below. Again, some of the records were investigatory in nature and exempt via § 84-712.05(5), or there was another adequate remedy available to Boppre. Additionally, the sheriff stated he did not have many of the requested records, and we acknowledge that his office would not be expected to have many of the records (e.g., records from departments other than Sheriff's department). We affirm the district court's denial of the writ in regards to paragraphs 2, 5-8, 10-16, 22, 23-26, 33, 35, and 38-40.

With respect to paragraph 20, Boppre requested the "criminal history" for numerous specified individuals. Overman's response was that "[w]e have no such records." However, as noted in Boppre's request, Neb. Rev. Stat. § 29-3520 (Reissue 2008) states that "Complete criminal history record information maintained by a criminal justice agency shall be a public record open to inspection and copying by any person during normal business hours." Further, Neb. Rev. Stat. § 29-3522 (Reissue 2008), states that if the requested criminal justice history record is not in the custody or control of the person to whom application is made, such person shall notify the applicant and state the agency, if known, which has custody or control of the record in question. We reverse the district court's denial of the writ with respect to paragraph 20, and we remand the matter to the district court with directions to issue an alternative writ of mandamus ordering Overman to show cause why he cannot provide Boppre with such documents, or at least notify Boppre which agency has custody or control of such records. See Neb. Rev. Stat. § 25-2158 (Reissue 2008) (writ is either alternative or peremptory; alternative writ commands defendant to do the act required or show cause why he has not done so; peremptory writ simply commands defendant to do the act required).

### (d) Remaining Assignments of Error

We have already determined that on their face, the requested records, with a few exceptions as noted above, were properly denied because they were clearly investigatory in nature or because another adequate remedy was available to Boppre. Accordingly, Boppre's remaining assignments of error--that the district court erred by not determining what documents were segregable, and by not holding Overman accountable for violating the public records statutes--need not be addressed. See *Gray v. Kenney*, 290 Neb. 888, 863 N.W.2d 127 (2015) (appellate court not obligated to engage in analysis not necessary to adjudicate case and controversy before it).

### VI. CONCLUSION

For the reasons stated above, we find that the district court did not abuse its discretion in denying Boppre's amended petition for writ of mandamus with respect to paragraphs, 1-5, 7, 11-17, and 19-20 of the letter dated March 14, 2015. We further find that the district court did not abuse its discretion in denying Boppre's amended petition for writ of mandamus with respect to paragraphs 1-19, 21-30, and 33-40 of the letter dated April 23, 2015.

However, we reverse the denial of the writ of mandamus with respect to the portions of paragraphs 9 and 10 of the letter dated March 14, 2015, seeking expense records for motel, food, gas, and the jail stay. And we remand the matter to the district court with directions to issue a peremptory writ of mandamus ordering Overman to provide Boppre with such documents if he is

in possession of them, and if Overman does not possess those documents to disclose that fact to Boppre.

We further reverse the district court's denial of the writ of mandamus with respect to paragraph 20 of the letter dated April 23, 2015. And we remand the matter to the district court with directions to issue an alternative writ of mandamus ordering Overman show cause why he cannot provide Boppre with the criminal history records, or at least notify Boppre which agency has custody or control of such records.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.

## APPENDIX A

In his letter to Overman dated March 14, 2015, Boppre set forth 20 separately numbered paragraphs requesting copies of various "public records" pursuant to § 84-712. We quote Boppre's requests verbatim including grammatical, typographical, and spelling errors. The bracketed information following each request summarizes the disposition of the request.

1. The original 911 call made by Eddie Johnson to the Scottsbluff Police Department on September 19th 1988 at approximately 11:15a.m to report the murder of Valdez and Condon.

   [Overman claimed the records were investigatory, or that the records were items available through the criminal court proceedings and had been previously provided to Boppre and his various attorneys. The district court found that the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

2. The search of the Wasmer Trailer and all names who participated in this search, and the warrant and who signed it? The affidavit to obtain warrant;

   [Overman claimed the records were investigatory, and also claimed the search warrant file was available in a district court filing and had been previously provided to Boppre by his various attorneys. The district court found the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

3. The photo of the gun blue steel automatic pistol seized from the wasmer trailer on September 22, 1988 at aproximately 2310, All photo's of evidence seized from the trailer which should include the following item #71,72,73,74,75,76,77,78-Bag of marijuana, How much? 79-gun, 80.81,82,83,84.

   [Overman claimed the records had been previously provided to Boppre by his various attorneys. The district court found the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

4. All latent fingerprints collected by Jim Larson on September 19th 1988 from the valdez resident which includes property tag #'s 29,31,32,33,34,35,36 specifically #33 that had a sufficient value for comparison purposes, but never identified to anyone, Would like all cards of latent fingerprints collected.

   [Overman claimed the records were investigatory, or that the records were items available through the criminal court proceedings and had been previously provided to Boppre and his various attorneys. The district court found that the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

5.    All documentation and records of why the property tags were changed during the investigation and trial, and who authorized this kind of conduct? What is the normal procedures or is this only Scottsbluff countys procedures.

[Overman claimed the records were investigatory, or that the records were items available through the criminal court proceedings and had been previously provided to Boppre and his various attorneys. The district court found that the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

6.    All documents of the amount that Leonard Tabor was paid to represent Boppre through-out his case including the appeal process to the Nebraska Supreme court.

[Writ of mandamus granted by the district court.]

7.    All investigator's written reports and documents, throughout the investigation of the Valdez/Condon murder which should include reports by Richard Blaha, Jim Lawson, Burt Rogers, Jack Medearis, Vern Hessler, Ray Huffman, Mark Overman, Alex Moreno, Rick Spencer, Robert Kinsey, J.G. Robinson, Gary Renner, Bob Rader, Sheriff Chuck Fairbanks, Ken Stute, and all other reports by any officers, state patrol, Sheriff's officers, police officers involved with this investigation that wrote any reports.

[Overman claimed the records were investigatory, or that the records were items available through the criminal court proceedings and had been previously provided to Boppre and his various attorneys. The district court found that the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

8.    All documents and logs of the custodian in charge of all evidence during the period of September 1988 to March 1995, and whom had authority to enter and log in evidence on October 17th 1988.

[Writ of mandamus granted by the district court.]

9.    All logs, Documents, reports, orders of Travel order taken by Alex Moreno, investigator Rick Spencer, Investigator Gary Renner, to Gallup New Mexico with William A. Niemann and Kenard Wasmer on October 12, 1988, which should include, Who authorized this order?, all Bills and motel name where stayed, food expenses, Gas expenses, Mileage traveled, Times which all arrived back to Scottsbluff county.

[Overman claimed the records were investigatory, or that the records were items available through the criminal court proceedings and had been previously provided to Boppre and his various attorneys. The district court found that the records were investigatory. We find

that the records, except for the expense records, are either investigatory or there is another adequate remedy available; writ of mandamus should issue for the expense records.]

10. All documents and logs of Jail records where William A. Niemann was housed on October 12, 1988, and Kenard Wasmer while on trip to Gallup New Mexico which the documents should reflect, The name of the Jail and Town, Booking records, Time he was booked in and released, Time returned back to Nebraska, Amount of the Jail stay? Who paid for stay and receipt of such. Was Gallup New Mexico authorities notified per law of the present of a search of a weapon in there state, if so all documents support there assistances. The booking process and procedures of the above prisoners booked into the Jail.

[Overman claimed the records were investigatory, or that the records were items available through the criminal court proceedings and had been previously provided to Boppre and his various attorneys. The district court found that the records were investigatory. We find that the records, except for the expense records, are either investigatory or there is another adequate remedy available; writ of mandamus should issue for the expense records.]

[Requests 11-15 all have the same bracketed response, which is provided following request 15.]

11. The written reports by Gary Renner of the Time, place when he alleged to have found a weapon in Gallup New Mexico in a mud hole without a metal detector, and the chain of custody of the weapon.

12. All logs, reports, Documents ,procedures and protocol that Law enforcement by law must follow when entering out of state jurisdiction when working on a case, to obtain evidence, Need all reports , documents, logs of the procedures and law followed when Alex Moreno, Rick Spencer, and Gary Renner transported William A. Niemann and Kenard Wasmer to Gallup New Mexico to search for evidence. Need who was contacted in Gallup New Mexico for assistances in Law enforcement, Names of all people involved from New Mexico, and all procedures followed.

13. All documents, logs. reports of why Alex Moreno never turned in the weapon into the evidence locker until 90 hours after the alleged find, Written report of the weapon being found on October 13th, but not turned in until monday 17th 1988, Need to know the protocol. Where the weapon was held for this period, Chain of custody, and why was it held.

14. All reports, interviews, documents, audio recordings with William A. Niemann and Kenard Wasmer from September 22, 1988 thur March 1995 by Brian Silverman, Doug Warner, Alex Moreno, Gary Renner, Jack Robinson, Mark Overman, and any other Law enforcement officers in regards to the Valdez/Condon murders. This should include any

- 13 -

and all interviews obtained, All audio recording interviews, all conversations that took place between these two individuals and law Enforcement officers.

15. All reports, interviews, documents, affidavits, audio recordings, transfer orders of melissa Moreno. This should include all interviews held by Law Enforcement officers between the time of september 1988 to September 2014, All threats made towards Melissa in regards to her statement by Jack Robinson, all interviews held at the State Patrols office, Documents of her being Placed into foster care during the Boppre Trial, All Criminal checks made by Brian silverman and in his file of knowing she was a eye witness of the murders. All interviews made by Alex Moreno, Pete Moreno, Gary Renner, Brian Silverman, and Doug Warner. The copy of the signed certificate of needs for Melissa Moreno as a witness on 5-11-92. The interview and Knowledge of Melissa Moreno on September 22, 1988 and the reason Law enforcement withheld her from Boppre at trial.

[Overman claimed the records were investigatory, or that the records were items available through the criminal court proceedings and had been previously provided to Boppre and his various attorneys. The district court found that the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

16. All affidavits for change of venue in regards to the scottsbluff residents saying that Boppre would never get a fair trial, there is 38 affidavits in the sheriff custody.

[Overman claimed the records were not in his custody; said they were likely offered into evidence and the court reporter would have them, otherwise Boppre's attorney should have copies. The district court found the records were investigatory. We find that the records are not investigatory, but that there is another adequate remedy available to Boppre.]

17. All photos taken in regards to the Valdez/Condon murders, which should include the 214 in the murder book, All autopsy photo's taken during that procedure by Mark Overman. There is approximately 300 photo's which is in the custody of the sheriff's department.

[Overman claimed the records had been previously provided to Boppre by his various attorneys. The district court found the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

18. All documents, records, logs of the schedule vacation of Alex Moreno on September 29, 1988 til Ocotber 10, 1988, and the route he took to L.A. California.

[Writ of mandamus granted by the district court.]

19. All Documents, records of the Plea agreement that Brian Silverman made with William A. Nieman, Kenard Wasmer, Ricky Zogg, and Michael Neu for the testimony against Boppre.

[Overman claimed the records were investigatory, or that the records were items available through the criminal court proceedings and had been previously provided to Boppre and his various attorneys. The district court found that the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

20. All Crime scene video's, all audio recordings, All interviews by Vicky Moreno, that was recorded,

[Overman claimed the records were investigatory, or that the records were items available through the criminal court proceedings and had been previously provided to Boppre and his various attorneys. The district court found that the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

**APPENDIX B**

In his letter to Overman dated April 23, 2015, Boppre set forth 40 separately numbered paragraphs requesting copies of various "public records" pursuant to § 84-712. We quote Boppre's requests verbatim including grammatical, typographical, and spelling errors. The bracketed information following each request summarizes the disposition of the request.

1.  The original 911 call made on November 27, 1992, pertaining to the death of Dolores A. Boppre, which should include the actual time, who responded to the call(name), and the actual time to get to the location.

    [Overman claimed he did not have the original 911 call. The district court found the records were investigatory. We accept Overman's claim that he does not have the record, and otherwise find that the district court was not clearly erroneous in finding the record is investigatory.]

2.  All records, documents, logs of all reported calls made to the Boppre residence from September 15, 1988 to November 28th 1992, this should include all reports made by law enforcement officers, Name of the officer who responded, was anything discovered.

    [Overman claimed he had no such records other than one report, of which he was providing the public record portion; claimed records at that time were not computerized and were incomplete. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding.]

3.  All reports, communications, documents, diagrams, photographs, audio, or video recording, and notes regarding the autopsy of Dolores A. Boppre in 1992. The time of the autopsy?, When it was completed? How much for such procedure? Who performed the autopsy?

    [Overman claimed the records were not public. The district court found that the records were investigatory. We find no clear error in the district court's finding, except to find that the cost of the autopsy is not investigatory and involves the expenditure of public funds; but there is another adequate remedy available to Boppre with respect to his request for records related to the cost of the autopsy via the coroner's office.]

4.  All reports, documents, logs from the EMT who first arrived at the scene, and what time this was? How long before the EMT's was allowed to enter the house to check on Dolores A. Boppre? Who prevented them from entering the house?

    [Overman claimed the records were not public. The district court found that the records were investigatory. We find no clear error in the district court's finding.]

5. All reports, documents, logs of the first officer to respond to the 911 call on November 27, 1992 for Doleres A. Boppre, and who Pronounced her to be deceased?

   [Overman stated he was providing Boppre with the public record portion of his request. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; it appears that the majority of this request involves records that were investigatory.]

6. All reports, documents and logs pertaining to the acting coroner that responded to the 911 call of Dolores A. Boppre on November 27, 1992. The time of the call, and the time of arrival to the scene. This should include the name of the coroner and his training records.

   [Overman stated he was providing Boppre with the public record portion of his request. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; we further find that some of these records would not be in the possession of Overman.]

7. All documents, reports, logs of all training of all coroners in Scottsbluff county, and the initial death investigation training pursuant to Neb. Rev. Stat. §23-1213.03. This should include training for the following individuals Douglas Warner, Brian Silverman, Brian loose and Ronald C. Blevins from January 1988 to January 2015, These documents should include the present County Attorney Dave Eubanks.

   [Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; we further find that these records would not be in the possession of Overman.]

8. All documents, reports, logs filed pursuant to Neb.Rev. Stat.§ 29-2524.01 in regards to the duties of the county attorney to file with the State Court administrator in reference to each criminal homicide in Scottsbluff county from January 1987 to May 2015 by all county attorneys which should include Doulas warner, Brian Silverman, Dave Eubanks and any other county attorneys not named. This report should include and be in complaince with Neb.Rev.Stat. §29-2524.01 (1)(2)(3)(4)(5)(6) and (7).

   [Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; we further find that these records would not be in the possession of Overman.]

9. All logs, documents, reports of chain of evidence on the following items collected on September 19, 1988 during the valdez/condon Homicides Bullets # 7A, 10A, 11A, 16A, 20A, 28A, 30A, 40, 41, & 42, the location of each bullet? who collected? and who took

custody of it, and the process after and who handled each bullet, the complete chain of custody, and the times of each collection?

[Overman claimed the records had been previously provided to Boppre by his various attorneys, witnesses testified at trial, and the trial transcript was available through Boppre's attorney. The district court found the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

[Requests 10-15 all have the same bracketed response, which is provided following request 15.]

10. All documents, logs, reports of Police Officers duties pursuant to Neb.Rev.Stat. §14-607 which is a requirement and the Law of Nebraska which provides in part all daily reports to the chief of Police of the times of lighting and extinguishing of all public lights and lamps upon their beat and also any lamps that may be broken or out of repair, This is law of Nebraska, and at this time I am asking for all documents pertaining to these duties from January 1987 to May 2015.

11. All documents, records and logs of the monthly payment paid to Ricky Zogg by Brian Silverman after the trial, The reason why Brian Silverman had Ricky Zogg on a salary after the murders of Valdez/condon? and who paid for Ricky Zogg's clothing at the trial of Boppre's . all receipts on this.

12. All documents, records, logs of all training that is required by law and Statute Neb.Rev. Stat. § 81-1431 regarding training issues in Human Trafficking which is mandatory for Law enforcement agencies, prosecutor, public defenders, judges, and juvenile detention center staff, records should be from January 1988 through May 2015.

13. All documents, records, logs of Boppre's stay in the 6x4 cell called the Hospital cell for 144 days, who authorized such a unconstitutional punishment for such a long time? What was the procedures for exercise, shower, & visiting.

14. All records, documents and logs of all visits by Leonard Tabor attorney, and documents of all visits Boppre had during the time of September 22, 1988 til May 4th 1989.

15. All documents, records, logs, receipts of the amount of money that was given to Kenard Wasmer from September 22, 1988 til May 4, 1989 for rents and salary paid to him by Scottsbluff county.

[Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding.]

16. All documents, records, logs of the original 911 call to the fire and death of Steven J. Schlothauer. Who took the call, and who made the call? who was the acting coroner to respond? What was his training, and was it up to date.

[Overman stated he was providing Boppre with the public record portion of his request. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; it appears that this request involves records that were investigatory; we further find that some of these records would not be in the possession of Overman.]

17. Any and all documents, reports, communications, diagrams, photographs, audio, or video recordings, and notes regarding the autopsy of Steven J. Schlothauer. The time of the authospy? When it was completed and by whom? How much for such a procedure.

[Overman claimed the records were not public. The district court found that the records were investigatory. We find that no clear error in the district court's finding, except to find that the cost of the autopsy is not investigatory and involves the expenditure of public funds; but there is another adequate remedy available to Boppre with respect to his request for records related to the cost of the autopsy via the coroner's office.]

18. All reports, documents, logs from the EMT's who first arrived at the scene, and what time was Mr. Schlothauer pronounced dead?

[Overman claimed the records were not public. The district court found that the records were investigatory. We find no clear error in the district court's finding.]

19. All reports, documents, logs of the safe removed from the Schlothauer trailer by Brian silverman and cut open illegally.

[Overman claimed the records were not public. The district court found that the records were investigatory. We find no clear error in the district court's finding.]

20. Pursuant to Neb.Rev. Stat.§29-3520, complete criminal history record information maintained by a criminal justice agency shall be a public record open to inspection and copying by any person, at this time I am requesting all criminal history for the following individuals Alan Niemann, Kenard Wasmer, Richard Valdez, Roger Sische, Jeff Polanski, Melissa Moreno, James Soundsleeper, Doug Warner, Brian Silverman, Alex Moreno, Ricky Zogg, Michael Neu, John Yellowboy, Eddie Johnson, Keith Broadfoot,XXXXXXXXXXX, Randy Kanzler, Kevin Cushing, David Schich, Corrie Ritchie

[Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find that an alternative writ of mandamus should issue ordering Overman to show cause why he cannot provide Boppre with such documents, or at least notify Boppre which agency has custody or control of such reports.]

21.    All documents, logs and chain of custody of the (5) Shell casings collected from the Boppre Residence by Alex Moreno on September 20, 1988 at Approximately 11:20 a.m but not turned into evidence until 6:30p.m and the (7) Bullets and (2) pieces of brass cllected by Investigator Jack Robinson of the Nebraska State Patrol on the same day, this should included being sent to the lab and examined by Mark Bohaty of the above items.

       [Overman claimed the records had been previously provided to Boppre by his various attorneys, witnesses testified at trial, and the trial transcript was available through Boppre's attorney. The district court found the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

22.    Pursuant to Neb.Rev.Stat.§14-816, all citizens of this state and other persons interested in the examination of the RECORDS kept by **ANY OFFICER** of the city are hereby fully empowered and authorized to examine the same free of charge, so at this time I the Plaintiff, Jeff Boppre is asking to examine all documents records, and logs of all reports written by all officers in Scottsbluff, and Gering pertaining to the Valdez/Condon homicides from September 16 1988 to December 1989 which should include the reports of the death of Dolores A. Boppre, Steven Schlothauer, and Joe Richter who was shot in the head.

       [Overman claimed that regarding the Valdez/Condon homicide, the records had been previously provided to Boppre by his various attorneys, witnesses testified at trial, and the trial transcript was available through Boppre's attorney. With regards to the deaths of Dolores Boppre and Steven Schlothauer, Overman stated he was providing the public record portions of the reports. With regard to Joe Richter, Overman claimed he had no such reports. The district court found that Overman properly responded to the request, and that the records were otherwise investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

23.    All documents, logs and records of Jeff Boppre being pulled over on his 1977 harley davidson motorcycle by the Scottsbluff Police depatment Mark Brethauer approximately 3 weeks prior to the valdez/Condon murders, but released even with the fact he had no valid drivers license in the state of Nebraska.

       [Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; we further find that police department records would not be in the possession of Overman.]

24.     All documents, logs and records of the Bond set for Roger Sische for the murder of Steven Schlothauer. Who gave him a bond?

        [Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; we further find that these records would not be in the possession of Overman.]

25.     Pursuant to Neb.Rev. Stat.§81.1401 to 81.1414.10 each sheriff shall attend twenty hours of continuing education in criminal Justice and Law enforcement course, at this time I Jeff Boppre, Plaintiff is asking for all records, logs, documents or the required continuing education for all sheriff's in Scottsbluff county from August 1988 to May 2015.

        [Overman stated that he was providing his training records from 2011-2015, but that he had no other Sheriff's training records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding.]

26.     All documents, logs , records of Alan Niemann being transported from Morrill county Jail to Scottsbluff , which should include the officers names, Dates and times for each move From September 22, 1988 to May 1989.

        [Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding.]

        [Requests 27-30 all have the same bracketed response, which is provided following request 30.]

27.     All photos taken by Gary Renner on October 13 1988 in Gallup New Mexico in regards to the weapon, and the place the film was developed at. This should be the negative for all photos with dates on them.

28.     All documents, logs, records and chain of custody of the Door and curtain recovered at the Valdez/condon, When it came up missing? Who destroyed? And who authorized this to be destroyed?

29.     All documents, logs, records and chain of custody of the weapon, when it was recovered? Who turned it into custody? The time it was logged in, The chain of custody to Mark Botary, and the return to Scottsbluff county, All exhibits that the gun is marked, at trial and testing?

30.     All documents, logs, reports of the drivers that gave Alan Niemann a ride on September 22, 1988 east of Scottsbluff, this should include the Police reports Sheriff reports of such.

[Overman claimed the records had been previously provided to Boppre through his various attorneys, witnesses testified at trial, and the trial transcript was available through Boppre's attorney. The district court found the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

31. All documents, reports, logs pertaining to the arrest of Alan Niemann, which should include the arresting officer, time he was booked into the Scottsbluff county jail, than transported to Morrill county jail, Officer who transported him and the time, and why he was transported.

[Writ of mandamus granted by the district court.]

32. All documents, reports, logs of Alan Niemann being transported from Morrill county to Scottsbluff County to give deposition on Friday January 27, 1989 at 8.00 a.m, who transported him, and when was he returned to Morrill county.

[Writ of mandamus granted by the district court.]

33. Pursuant to Neb.Rev.Stat. §23-1305 it is the duty of the county clerk to record in a proper book, to be called the **ROAD RECORD**, a record of the proceedings in regards to laying out and establishing changing or discontinuing roads in the county, at this Time the Plaintiff Jeff Boppre am requesting the logs, records, and documents pertaining to this statute from September 1988 thur May 2015.

[Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; we further find that these records would not be in the possession of Overman.]

34. All documents, records, logs, photo's taken by Rick Spencer, Gary Renner and Alex Moreno of the Wildcats on October 13th 1988, which should include all negatives and times that the photo's were taken, and where they were developed at.

[Overman claimed the records had been previously provided to Boppre through his various attorneys, witnesses testified at trial, and the trial transcript was available through Boppre's attorney. The district court found the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

35. All documents, records, logs of the proceedings of Alan Niemann during the Plea proceedings of guilty to Robbery on October 31, 1988, and the sentencing proceedings in March 1989 when he was sentenced.

[Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; we further find that these records would not be in the possession of Overman.]

36. All documents, records, logs, interviews and audio recording of the Zitterkopfs by Vicky Moreno, and any other Police office or sheriff that took any statements from the Zitterkopfs pertaining to the Valdez/Condon murders in September 1988.

[Overman claimed the records had been previously provided to Boppre through his various attorneys, witnesses testified at trial, and the trial transcript was available through Boppre's attorney. The district court found the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

37. All documents, records, logs and Audio recording by Alex Moreno of Michael Neu of the afternoon (Friday) February 3, 1989 at approximately 1:30pm in regards to his statement he made against Boppre.

[Overman claimed the records had been previously provided to Boppre through his various attorneys, witnesses testified at trial, and the trial transcript was available through Boppre's attorney. The district court found the records were investigatory. We find that the records are either investigatory or there is another adequate remedy available.]

38. Pursuant to Neb.Rev. Stat.§23-1304, The county clerk shall keep a book in which shall be entered in Alphabetical order, by name of the principal, a minute of all Official Bonds filed in his office giving the name of the office, amount and date of Bond, name of surties, and date of filing, with proper reference to the book and page where the same is recorded, at this time the Plaintiff, Jeff Boppre is requesting a copy of all bonds for all offices from September 1987 to May 2015, which this should include the Bond given by Doug Warner, Brian Silverman, and the present deputy Attorney general Doug Warner which by law must give bond to the State of Nebraska in the sum of Ten Thousand dollars, I am requesting a complete records on all bonds in Scottsbluff County.

[Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; we further find that these records would not be in the possession of Overman.]

39. Pursuant to Neb.Rev.Stat.§47-204 The officer in charge of any municipal jail shall keep a written record which shall show the name of each person confired, the date of the commencement and termination of his or confinement, the nature of the charge against him or her, and the medical service provided, At this time I the Plaintiff Jeff Boppre am requesting all documents, records and logs for the following individuals from June 1988 to August 1989 which should include Jeff Boppre, Ricky Zogg, Alan Niemann, Michael Neu,

Roger Sische, Jeff Polanski, Kevin Cushing, Eddie Johnson, Kenard Wasmer, John Yellowboy.

[Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; we further find that these records would not be in the possession of Overman.]

40.   Pursuant to Neb.rev. Stat. §23-1217, all documents, records, and logs for the county attorney, deputy county attorney the mandatory continuing legal education that is required for all county attorneys, deputy in Scottsbluff county for August 1988 to May 2015, This should include all expenses records incurred such as tuition, fees etc for Doug Warner, Brian Silverman, Dave Eubanks and any other acting county attorneys in Scottsbluff county.

[Overman claimed to have no such records. The district court found that Overman properly responded to the request. We find no clear error in the district court's finding; we further find that these records would not be in the possession of Overman.]

(Emphases in original.)